NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
Ryan M. Ferrell, Bar No. 258037
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Ex. Rel., ZACHARY HALLSTROM,<br><br>Plaintiff,<br><br>vs.<br><br>THERMOLIFE INTERNATIONAL, LLC.; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR FALSE PATENT MARKING**<br><br>**JURY TRIAL DEMANDED** |

## I.    INTRODUCTION

1.    This lawsuit is brought to stop a sophisticated defendant from luring unwary consumers into paying an inflated price for a worthless product by falsely claiming that it is patented. The products are marketed under the name "Dicana" and claim to cause the human body to channel fat calories towards energy use and other nutrients towards muscle production. Specifically, Defendant advertises that "Dicana

///

Naturally Occurring Metabolic Regulator is a powerful, ***patent pending***, non stimulating dietary supplement developed to cause extreme body fat loss while sparing muscle tissue.  In the world of fat burning physiology, Dicana exerts a truly unique phenomenon, there is certainly NOTHING in today's marketplace that even comes remotely close to the powerful metabolic activity of Dicana.  There is no other product on the market that can make these claims and there is no other product on the market nearly as effective as the fat incinerator Dicana.  No other company can sell you Dicana, because after we discovered this metabolite and its unique metabolic activity we filed a U.S. utility patent in order keep the competition from stealing our intellectual property."

2.     Defendant's claims are false –Dicana is not patented and does not have a patent pending.  Moreover, the misleading nature of Defendant's advertising, paired with Defendant's marketing sophistication and Defendant's own assertion of making the claim to keep competitors away ("No other company can sell you Dicana, because … we filed a U.S. utility patent…") show that Defendant's false marking was intentional.

## II. JURISDICTION, VENUE, AND STANDING

3.     This Court has subject matter jurisdiction pursuant to 35 U.S.C. §292(b) and 28 U.S.C. § 1338(a).

4.     Defendant is subject to personal jurisdiction in this District because it conducts business in this district and the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

5.     Venue is proper in this District under 28 U.S.C. §§1391(c) and 1395(a), because Defendant's products that are the subject of this Complaint are advertised for sale, offered for sale, and sold within this judicial district.

6.     Plaintiff possesses the requisite standing required by Article III of the United States Constitution pursuant to 35 U.S.C. §292(b), which confers upon any

person the right to sue for civil monetary penalties, restitution, and injunctive relief for false patent marking.

## III. THE PARTIES

7.   Plaintiff Zachary Hallstrom ("Plaintiff") is a California citizen who believes in the importance of a fair and competitive market for the manufacture, marketing, sale, and distribution of consumer products.

8.   Defendant Thermolife International LLC is a company of unknown origin that manufactures, advertises, distributes, and sells nutrition supplements, including Dicana.

## IV. BACKGROUND FACTS

### A.   The Purpose of this Action

9.   The purpose of this lawsuit is to act in the public interest to enforce the policy underlying the false marking statute, 35 U.S.C. §292.

### B.   The Policy of the Patent Marking Statute

10.   The patent marking statute (35 U.S.C. §287(a)) and the false patent marking statute (35 U.S.C. §292) exist to ensure that the public has accurate information on the existence of patent rights.

11.   The purposes of the patent marking statute were explained by the Federal Circuit in *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998), as: (1) helping to avoid innocent infringement, (2) encouraging patentees to give notice to the public that the article is patented, and (3) aiding the public to identify whether an article is patented.

12.   Over half a century ago, the Supreme Court stated in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery*, 324 U.S. 806, 816 (1945), that patents by their very nature are affected with a public interest:

*The possession and assertion of patent rights are 'issues of great moment to the public.' A patent by its very nature is affected with a public interest. As recognized by the Constitution, it is a special privilege designed to serve the public purpose of promoting the 'Progress of Science and useful Arts.' At the same time, a patent is an exception to the general rule against monopolies and to the right to access to a free and open market.*

13.  The Patent Act of 1952 provides a *qui tam* cause of action on behalf of the public to fine the offender in an amount of up to $500 for each offense, with half going to the use of the United States, and the other half going to the person bringing the action.

14.  False marking of unpatented articles as "patented" is injurious to the public interest, as explained by the United States Court of Appeals, in at least the following ways:

- Acts of false marking deter innovation and stifle competition in the marketplace.
- False marks deter scientific research when an inventor sees a mark and decides to forgo continued research to avoid possible infringement.
- False marking can cause unnecessary investment in design around or costs incurred to analyze the validity or enforceability of a patent whose number has been marked upon a product with which a competitor would like to compete.
- Additionally, consumers who see a product as "patented" are likely to infer the product possesses design or utilitarian features that are unique to such article, and not available in substitute articles from other producers, thus inducing consumer demand for the marked article and causing consumers to pay an artificial premium for the product.

///
///
///
///

- 4 -
COMPLAINT FOR FALSE PATENT MARKING

C. **Defendant's False Marking in Violation of the Patent Act**

15. Defendant manufactures, advertises, licenses, and sells a nutrition supplement called Dicana. Defendant advertises Dicana as a miracle drug for weight loss and muscle growth. Specifically, Defendant claims:

- Dicana is a powerful, ***patent pending***, non-stimulating dietary supplement developed to cause extreme body fat loss;
- Dicana has emerged as the most powerful, biologically intelligent, and non-stimulating formulation ever;
- Dicana is a revolutionary, outside-the-box approach to fat loss;
- Dicana strategically repartitions calories;
- Dicana melts away the pounds;
- Dicana is fueled by a powerful proprietary combination of ***patent pending*** Dilodothyroacetic acid isomers.

16. Defendant further uses confusing psuedo-scientific language to describe the superhuman results they promise users will achieve:

"Listen up! Weight loss from dieting and exercise comes to a grinding halt because your body is smart. Your body, essentially, slows downs your basal metabolic rate (BMR) as you get leaner. "What's my BMR", you ask? Your BMR is the rate at which your body burns calories at rest. The faster it burns the less body fat you carry, and the slower it burns the harder it is to vanquish that fat. Now, your thyroid gland masterfully regulates your BMR by producing two primary hormones, T4 (thyroxin) and T3 (triiodothyronine). Interestingly, a greater amount of T4 is produced compared to T3, yet T3 packs far more fat annihilating horse power than T4 does. To create T3, T4 is converted by the deiodinase enzyme into T3. But here is how your body makes losing more weight a pain in the you know what. When dieting, your body produces significantly LESS deiodinase enzyme which results in LESS T3! Thus

> your basal metabolic rate slows with less T3 available, and fat loss nearly grinds to a formidable halt.
>
> THAT is precisely WHY ThermoLife scientists developed Dicana - a powerful non-stimulating and fat annihilating formulation designed to naturally RAISE your basal metabolic rate and obliterate body fat when dieting!
>
> Because T3 is a prescription and thus not an option to supplement with, Dicana is fueled by powerful, *patent-pending*, Diiodothyroacetic acid isomers. These ground breaking isomers are metabolically active on their own in addition to having direct reversible pathways to the fat incinerating T3 thryoid hormone, Tricana, and T2! Increasing body temperature and oxygen consumption, fatty acids are freed from fat cells and burned to meet your body's new metabolic demands.

17.  Defendant falsely advertises that Dicana is patent pending. For example, Defendant advertises on its websites that, **"Dicana is a powerful, *patent pending*, non-stimulating dietary supplement."** *(emphasis added).*[1]

18.  In addition to falsely marking each container of Dicana as patent pending, nearly every retailer who sells Dicana via the internet falsely claims that Dicana is patent pending. In reality, the Dicana is ***not*** patented and has ***no*** patent pending. Counsel for Plaintiff has exhaustively researched public records, including the records of the United States Patent & Trademark office (found at www.uspto.gov) that are presumed to be conclusively accurate, and have confirmed that Dicana is not patented and has no patent pending.

### D.   Defendant's Violation of the Patent Act Was Intentional.

19.  Defendant's false claims have driven enormous sales of the Dicana.

---

[1] *See* http://www.thermolife.com/products/Dicana/index.php (last downloaded on September 1, 2010).

20. This case is "exceptional" for purposes of 35 U.S.C. § 285 because Defendant has no reasonable basis upon which to genuinely believe Dicana is patented. Further, Defendant acknowledges the reason for making the patent claim is to drive away competition. "No other company can sell you Dicana, because … we filed a U.S. utility patent…"

21. Defendant engaged in this false marking scheme to deceive the public and to stifle legitimate competition, and to gain a competitive advantage in the market. There are numerous indicia that Defendant's false marking was intentional and committed with the specific design to profit from misleading and confusing unwary consumers.

### V.   FIRST CAUSE OF ACTION: FALSE PATENT MARKING

22. Plaintiff re-alleges the preceding paragraphs and incorporates them herein by reference.

23. Defendant knows that it can charge a premium for products that the public perceives to be unique and protected by a patent.

24. Defendant has marked, or caused or allowed to be advertised, Dicana as being patent pending when, in reality it is not.

25. Defendant has violated 35 U.S.C. § 292(a), which provides in relevant part:

> *Whoever without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the*

*consent of the patentee; or Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word "patent" or any word or number importing the same is patented, for the purpose of deceiving the public; or Whoever marks upon, or affixes to, or uses in advertising in connection with any article the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public - Shall be fined not more than $500 for every such offense.*

26. Each false marking on Dicana is likely to discourage or deter persons and companies from commercializing competing products.

27. Defendant's false marking of Dicana has wrongfully stifled competition with respect to similar and potentially competing products, thereby causing harm to plaintiff, the United States, and the public.

28. Defendant has wrongfully and illegally advertised a patent monopoly that it does not possess and, as a result, has benefitted commercially and financially by maintaining false statements of patent rights.

29. Defendant is therefore liable to plaintiff and to the United States under 35 U.S.C. §292 (b). The public interest requires that Defendant be enjoined from further acts of false marking, pay civil penalties, and make restitution for their ill-gotten gains.

## VI.   PRAYER FOR RELIEF

Plaintiff seeks entry of judgment against defendant as follows:

1. A judicial determination that Defendant has violated 35 U.S.C. §292 by falsely advertising and marking Dicana as "patent pending" for the purpose of deceiving the public;

2. An order fining Defendant for false marking in an amount that is reasonable in light of the total revenue and gross profit derived from the sale of falsely

1  marked Dicana and the degree of intent to falsely mark which is proven, with half of the
2  fine paid to the United States Government and the other half to plaintiff;

3.  An order preliminarily and permanently enjoining Defendant and their affiliates from committing new acts of false patent marking and to cease all existing acts of false patent marking;

4.  An award of attorneys' fees and costs incurred in bringing and maintaining this action, in part because it is "exceptional" for purposes of the Patent Act; and

5.  Any such other relief to which plaintiff, the United States, or the general public may be entitled.

Dated:  September 21, 2010

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell


By: /s/ Scott J. Ferrell
   Scott J. Ferrell
   Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Section 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: September 21, 2010

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell

By: /s/ Scott J. Ferrell
　　　Scott J. Ferrell
Attorneys for Plaintiff

COMPLAINT FOR FALSE PATENT MARKING